**UNITED STATES of America,**
**Plaintiff,**

v.

**Bernard GROSS, Defendant.**

**No. CR 97–1178 ABC.**

United States District Court,
C.D. California.

April 12, 1999.

Sandra Klein, Special Assistant U.S. Attorney, Los Angeles, CA, for Plaintiff.

David A. Katz, Katz & Associates, Los Angeles, CA, for Defendant.

## ORDER RE: DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FIFTH AMENDMENT AND DUE PROCESS VIOLATIONS

COLLINS, District Judge.

Defendant's Motion to Dismiss the Indictment for Fifth Amendment and Due Process Violations came on regularly for hearing before this Court on April 12, 1999. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Defendant's Motion is DENIED as to dismissal of the indictment, but the Government is required to provide copies of this Order to certain supervisors.

### I. FACTS

On February 1, 1999, counsel for the Government informed Defendant's counsel that on February 9, 1999, the Government intended to present a proposed superseding indictment to the grand jury. *See* Facsimile Letter from McNally to Katz dated Feb. 1, 1999, Gov't Exh. 1. Defendant sought to postpone presentation of the indictment to the grand jury until February 16, 1999 because of Defendant's illness. *See* Facsimile Letter from Katz to McNally dated Feb. 9, 1999, Gov't Exh. 2. Defendant informed the Government that he wished to testify and present exculpatory evidence to the grand jury. *Id.* Despite Defendant's repeated efforts to persuade the Government to postpone the hearing, the Government informed defense counsel that the Government's presentation to the grand jury would proceed as scheduled. *Id.* The Government further stated that Defendant could testify on the regularly scheduled date of February 9, 1999. Defendant did not do so, and the grand jury returned a superseding indictment against Defendant on that date.

### II. Analysis

The Court has reviewed the parties' papers on Defendant's motion to dismiss the indictment for Fifth Amendment and Due Process violations and in the Exercise of this Court's Supervisory Powers. Defendant raises three arguments in his motion.

First, Defendant argues that the Government violated Defendant's Fifth Amendment and due process rights by denying him the right to testify and provide exculpatory evidence in his grand jury proceeding, despite Defendant's explicit request to do so. Second, Defendant urges the Court to exercise its supervisory power to dismiss the indictment because of these constitutional violations. Third, Defendant requests the Court to set an appropriate remedy for the prosecutor's failure to present exculpatory evidence to the grand jury in violation of Justice Department internal regulations.

■ The Court finds Defendant's constitutional arguments meritless. As Defendant recognizes, in *United States v. Williams*, 504 U.S. 36, 37, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), the Supreme Court held that the district court could not dismiss an otherwise valid indictment because the Government failed to disclose to the grand jury " 'substantial exculpatory evidence' in its possession." The Supreme Court reasoned that federal courts did not have the supervisory power to prescribe such standards of prosecutorial conduct before the grand jury "[b]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside." *Id.* at 47, 112 S.Ct. 1735.

Defendant argues this case is distinguishable from *Williams* because whereas *Williams* brought his claim under the court's supervisory powers, Defendant brings his claim under the Constitution's Fifth Amendment and Due Process Clause. Defendant avers that Williams' error was simply that he "did not plead his claim correctly." To support this claim, Defendant points to the Supreme Court's opening statement in its analysis that "Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury." *Id.* at 45, 112 S.Ct. 1735.

■ Defendant misses the point of the Supreme Court's statement. Rather than connoting that, in fact, petitioner would have been successful had he merely posed his claim as a constitutional one, the Court made this differentiation at the outset because the constitutional claim, as opposed to the issue of the court's supervisory power which. was before the Court, was settled law. By the time *Williams* was decided, it was already well-established that there is no constitutional right or non-constitutional right of "fundamental fairness" guaranteeing that a defendant may testify before the grand jury if he so chooses. *United States v. Salsedo,* 607 F.2d 318, 319 (9th Cir.1979). A grand jury proceeding is not an adversary proceeding in which the defendant's guilt is adjudicated. Accordingly, an accused has "... no right of cross-examination, or of introducing evidence to rebut (a) prosecutor's presentation." *United States v. Y. Hata & Co.,* 535 F.2d 508, 512 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976). Accordingly, the Court finds Defendant's constitutional claims fail.

■ However, as Defendant points out, the Court need not prescribe a rule because a rule is already in place. The Government has set forth § 9–11.233 of the United States Attorney Manual which provides as follows:

> In *United States v. Williams,* 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), the Supreme Court held that the Federal court's supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial exculpatory evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

United States Attorneys' Manual, § 9–11.233. In fact, the Court finds that rule § 9–11.152 addresses this issue even more directly, although neither the Government nor Defendant cited it:

> [U]nder normal circumstances, where no burden on the grand jury or delay[1] of its proceedings is involved, reasonable requests by a 'subject' or 'target' of an investigation ... personally to testify before the grand jury ordinarily should be given favorable consideration, provided that such witness explicitly waives his/her privilege against self-incrimination and is represented by counsel or voluntarily and knowingly appears without counsel and consents to full examination under oath.

United States Attorneys' Manual § 9–11.152.

The prosecutors were certainly aware of § 9–11.253 particularly since Defendant had pointed it out to them in his request for postponement of the grand jury vote. *See* Facsimile Letter from Katz to McNally dated Feb. 9, 1999, Gov't Exh. 2. at 2. Although not cited by Defendant, the prosecutors are also charged with knowledge of 9–11.152. The prosecutors noted that Defendant was free to testify at the grand jury proceeding on February 9, 1999, but they effectively denied Defendant this right ·by holding the hearing on a date when they knew Defendant could not attend.

Defendant has argued that by testifying himself, he could have provided exculpatory information because Defendant main-

---

**1.** The Court does not believe that the one-week postponement requested by Defendant, given that it was the first postponement requested and was for such short duration, constitutes "delay" that would take the Government's conduct outside the rule's parameters.

tains his innocence and, he believes, the chance to tell his side of the story would have been persuasive to the grand jury. The Court finds it arguable whether Defendant's testimony would truly have been exculpatory, particularly given that the prosecutors would have controlled the questioning.[2]

Whether or not the information was exculpatory, the Court is nonetheless concerned about the prosecution's behavior in this case. Defendant clearly expressed his desire to testify, believing he had exculpatory evidence to provide to the jury. The Government did not deny Defendant's request on the grounds that it believed his testimony would not be exculpatory nor did it dispute Defendant's contention that it was. In fact, the Government does not raise such an argument even now in opposition to Defendant's motion. Rather, the Government simply states that because Defendant, "who complains of chronic illness, did not offer any reason to believe he would be well enough to testify on February 16, 1999," the Government would proceed as scheduled with the grand jury presentation. Opposition at 3. The Court disagrees that Defendant "did not offer any reason," because defense counsel's statement that Defendant would be ready to testify on February 16, 1999 is reason enough to believe it would be so. Had the Government postponed the date at least once, then the Government would have been in a much better position to make this argument. The prosecution, therefore, effectively prevented Defendant from testifying before the grand jury. Given the fact that the Government raised no issue as to the nature of Defendant's testimony and, yet, prevented him from testifying, the Court finds that the Government's conduct violated Justice Department internal policy § 9–11.233.

The question for the Court then, is the appropriate remedy for the violation. The Court finds the reasoning of the First Circuit in *United States v. Pacheco–Ortiz,* 889 F.2d 301 (1st Cir.1989) compelling. In that case, the prosecution failed to give "target" warnings to defendant before he testified before the grand jury. *Id.* at 307. The court noted that although the Supreme Court has explicitly held that grand juries were not constitutionally required to provide to "target" or "potential defendant" warnings, that it was Department of Justice policy to give warnings for targets. *Id.* at 307. The court further observed that sound reasons supported this policy. At the same time, the court expressed that its supervisory powers should be used reluctantly. *Id.* at 310. The court also found no showing that either the decision to indict the defendant or his conviction was the product of prosecutorial misconduct in failing to give target warnings. Accordingly, the court found suppression of the defendant's testimony and a new trial an inappropriate sanction.

The Court agrees with the First Circuit. The circumstances here are remarkably similar to those confronting the *Pacheco–Ortiz* court. In this case, the prosecution violated internal policy, if not a Supreme Court mandate. The Court believes the exculpatory evidence disclosure policy exists for good reason. As the dissent noted in *Williams,* the prosecutor's duty to protect the fundamental fairness of judicial proceedings assumes special importance when he or she is presenting evidence to a grand jury. *Williams,* 504 U.S. at 62, 112 S.Ct. 1735. " 'The ex parte character of grand jury proceedings makes it peculiarly important for a federal prosecutor to remember that, in the familiar phrase, the interest of the United States "in a criminal prosecution is not that it shall win a case, but that justice shall be done" (citation omitted).' " *Id.* at 63–64, 112 S.Ct. 1735 quoting *United States v. Ciambrone,* 601 F.2d 616 (2d Cir.1979) (Friendly, J. dissenting).

Although recognizing the Government's misconduct, the Court notes that there has

---

**2.** Of course, under § 9–11.152, whether or not Defendant would have provided exculpatory evidence is irrelevant for purposes of finding a violation of the rule.

been no evidence presented which suggests that the indictment was the product of the failure to permit Defendant to testify. Thus, given the Supreme Court's clear intention that supervisory powers be exercised "sparingly," the Court finds that dismissal of indictment would be too great a remedy, given the misconduct in this case.

However, as with the *Pacheco–Ortiz* court, the declination to dismiss an indictment does not end the inquiry. The Court is "left with the uneasy feeling that certain prosecutors feel free to ignore precatory judicial statements of concern" and does not want the policy's violation to be "immune to expressions of judicial dissatisfaction" *Pacheco–Ortiz*, 889 F.2d at 310–11. The Court believes the internal policies of the Justice Department are sound. Referral to the Office of Professional Responsibility focuses the remedy on the responsible individuals—the prosecutors. *See Id.* at 311 n. 11 (relying on the Supreme Court's directive in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)).

Given that this is the first time the Court has been presented with a violation of this provision by the Office of the U.S. Attorney for the Central District of California, and that there is some question as to the exculpatory nature of the evidence, the Court will not make such a referral itself this time. However, to facilitate educational efforts to prevent future violations, the Court finds it appropriate that notice of this Court's Order be sent to supervisors at the U.S. Attorney's Office of the Central District of California. If this Court learns of future violations, the U.S. Attorney's Office is on notice that this Court will not hesitate to make future referrals to the Office of Professional Responsibility for review.

### III   Conclusion

For the reasons stated above, the Court hereby ORDERS the Government to provide copies of this Order to the head of the Criminal Division of the United States Attorney's Office of the Central District of California, and to the United States Attorney for the Central District of California.

**SO ORDERED.**